**Joseph D. CARAPICO, Plaintiff,**

v.

**PHILADELPHIA STOCK EXCHANGE, INC., a Delaware Corporation, Defendant.**

**Civil Action No. 16764.**

Court of Chancery of Delaware, New Castle County.

Submitted: Aug. 28, 2000.
Decided: Sept. 27, 2000.

Charles Slanina, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware; Francis Recchuiti, Esquire, Vangrossi and Recchuiti, Norristown, Pennsylvania, Attorneys for Plaintiff.

Jon E. Abramczyk, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Attorneys for Defendant.

## *OPINION*

LAMB, Vice Chancellor.

## I. INTRODUCTION

Joseph Carapico, an owner of two seats on the Philadelphia Stock Exchange ("Exchange" or "PHLX"), brought this action under 8 *Del. C.* § 220 after the Exchange, a Delaware nonstock membership corporation, refused Carapico's October 20, 1998 demand for inspection of its books and records.[1] Plaintiff's § 220 request stems from events surrounding inquiries brought by the United States Securities and Exchange Commission into the Exchange's practices. The SEC's inquiry resulted in the imposition of sanctions and limitations on the business practices of the Exchange and its subsidiaries. Evidently, it also resulted in the departure of several Exchange officials who received severance packages.

---

1. Although this action was filed in November 1998, plaintiff never sought to expedite proceedings.

The Exchange claims that Carapico's stated purpose for inspection is not his *bona fide* purpose and that he does not have a "proper purpose" under Delaware law. It also maintains that Carapico's demand lacks the requisite specificity under § 220. Citing Carapico's history of litigation with it, PHLX argues that plaintiff's true purpose behind the demand is merely to harass the Exchange.

After hearing testimony and reviewing plaintiff's demand, I find that Carapico has made a proper demand for inspection under § 220. I grant his demand for inspection of books and records of the Exchange, subject to the limits discussed below.

## II. FACTUAL BACKGROUND

Carapico initiated his books and records demand in 1998, filing his first demand in September and following this up with a second, more detailed demand in October. According to PHLX, Carapico was "the leader of a faction of [Exchange] members" who opposed a proposed merger of the Exchange with the American Stock Exchange and NASDAQ, and was primarily using the books and records action as "part of [his] strategy opposing the transaction." Carapico's § 220 demand, however, is broader than defendant's characterization of it, seeking not only books and records regarding the proposed merger, but also information related to the SEC inquiry and the subsequent payment of severance benefits to PHLX executives.

The Exchange formerly had two wholly owned subsidiaries, the Philadelphia Depository Trust Company ("Depository Trust") and the Stock Clearing Corporation of Philadelphia ("Clearing Corporation"). Depository Trust was one of only two depository trusts in the United States, offering safekeeping, automated dividend accounting, automatic receipt and delivery by book entry. Clearing Corporation offered trade reporting, trade comparison, continuous net settlement, trade for trade settlement, margin financing, stock borrowing and lending, money settlement and clearance, and settlement with other clearing agencies. According to the trial testimony, both were valuable assets of the Exchange, affording Exchange members the ability to conduct their business less expensively and more efficiently.

The SEC conducted an inquiry into the activities of the Exchange's subsidiaries as well as their chief operating officer, Timothy J. Guiheen, and their chief financial officer, William N. Briggs, resulting in Orders Instituting Proceedings and Imposing Sanctions in August 1997. As a consequence, the Depository Trust agreed to cease providing its services to the Exchange and the Clearing Corporation agreed to limit the scope of its services to the Exchange. Guiheen was ordered to cease and desist from present and future violations, and Briggs was censured and prohibited for two years from acting as chief financial officer of the Exchange.

Trial testimony suggested that the loss of the Depository Trust and the limitations on the Clearing Corporation have significantly damaged the Exchange and negatively affected the value of the members' interests therein. Plaintiff maintains that the changes with respect to the Clearing Corporation have left the trading floor "a fragment, a shadow of its former self," while the loss of the Depository Trust and the SEC actions have diminished customer confidence in the Exchange's activities.

A number of Exchange executives departed at or about the time the SEC inquiry came to a head. Some of them, including Guiheen, were given severance packages. Plaintiff seeks access to documents to investigate the relationships between the misconduct identified by the SEC, the departure of executives, and the payment of severance benefits to officials involved in the misconduct.

Plaintiff seeks in this § 220 action the following categories of documents: [2]

1. All buyout, termination and/or other settlement agreements wherein payments are being or were made during the four years previous to the demand to any former executives, officers, employees, consultants, subcontractors and/or professionals of [the Exchange] and/or any of its wholly-owned subsidiaries and all documents referring to or reflecting the amounts paid or to be paid pursuant to such agreements.

2. All documents, including investigations and audits conducted the four years previous to the demand pertaining to the conduct of any person who is or was a party to any arrangement or agreement of the type referred to in ¶ 1 above.

3. All documents concerning the Stock Clearing Corporation of Philadelphia, a wholly-owned subsidiary of [the Exchange], involving its current status and/or its diminution or loss of its power, authority and operations for three years prior to the demand, including, but not limited to, SEC investigative reports, audit reports, minutes of meetings and executive sessions, and current financial reports.

4. All documents concerning the Philadelphia Trust Company, a wholly-owned subsidiary of [the Exchange], involving its status and/or its diminution or loss of its power, authority and operations for the four years prior to the demand, including but not limited to, SEC investigative reports, audit reports, minutes of meetings and executive sessions, and current financial reports.

5. All documents concerning any and all audit reports covering the failure to appropriately monitor expenses of any officer(s), employee(s), and/or governor(s) of [the Exchange] or any of its wholly-owned subsidiaries mentioned hereinbefore in ¶¶ 3 and 4 above, and any payment and approval of monies made not in accordance with any report recommendation and/or made not in accordance with standard practice.

### III. LEGAL ANALYSIS

■■■ A member of a nonstock corporation has the right to inspect books and records of the corporation under 8 *Del. C.* § 220 in the same manner as a stockholder of record has in a stock corporation.[3] Pursuant to § 220, the member seeking inspection of books and records must comply with the "form and manner" requirements of the statute for making the demand for inspection and must establish that the inspection sought is for a proper purpose.[4] In a books and records request, "the burden of proof is on the [member] to demonstrate that his purpose is proper."[5]

### A. Are plaintiff's purposes his *bona fide* purposes?

■■■■ It is undisputed that plaintiff complied with the requirements of § 220 in

**2.** The demand originally included several categories of documents relating to the proposed merger. PHLX has since abandoned this merger proposal and Carapico has withdrawn the merger-related items.

**3.** "As used in this section, 'stockholder' means a stockholder of record of stock in a stock corporation and also a member of a

nonstock corporation as reflected on the records of the nonstock corporation." 8 *Del. C.* § 220(a).

**4.** 8 *Del. C.* § 220(c).

**5.** *Thomas & Betts Corp. v. Leviton Mfg. Co.,* Del.Supr., 681 A.2d 1026, 1031 (1996).

delivering his initial request for inspection and that this request was denied. Because a § 220 demand requires that plaintiff's primary purpose for inspection be proper under Delaware law, this court may scrutinize the stated purpose to determine whether plaintiff is attempting to "sidestep" the proper purpose requirement.[6] The existence of a secondary purpose does not defeat plaintiff's claim that his purpose is *bona fide.* As this court stated in *BBC Acquisition v. Durr–Fillauer Medical,* "[s]ince ... a shareholder will often have more than one purpose, that requirement has been construed to mean that the shareholder's *primary* purpose must be proper; any *secondary* purpose, whether proper or not, is irrelevant."[7]

Carapico initially asserted several purposes in his books and records demand. However, after the merger was cancelled, the only requests remaining were requests for information concerning potential mismanagement as well as the severance packages offered to departing Exchange officers. The relevant portions of plaintiff's demand now reads:

The purposes of these demands are:

F. To determine whether the present or former management have made payments to individuals who engaged in illegal activities with respect to the organizations herein involved, including, but not limited to, any payments made to individuals accused of improper acts and/or the improper and continuing payment of unapproved and unsubstantiated expense items.

G. To determine whether the assets of the corporation are being, or have been, or will continue to be misapplied or wasted.

\*   .   \*       \*       \*       \*       \*

Former Officers and management staff were severed from their positions with PHLX and its subsidiaries and given enormously lucrative financial severance arrangements when internal audits revealed that termination for cause or criminal prosecution should have been instituted. . . .

The Securities and Exchange Commission examined the operations of the Stock Clearing Corporation and the Philadelphia Depository Trust Company, wholly-owned subsidiaries of PHLX, and found serious deficiencies in their operations and failure by these corporations to comply with their own written rules and regulations, and the [SEC's] recommendations resulted in the curtailment of their activities and subsequent liquidation of the Philadelphia Depository Trust Company which has greatly diminished the value of the Philadelphia Stock Exchange as a comprehensive business.

It is clear from the record that plaintiff initially had other reasons for requesting inspection of the Exchange's books and records—particularly to address his concerns regarding the potential merger. Defendant noted several references in correspondence between the parties reflecting plaintiff's concerns about the potential merger. Nevertheless, in both the pretrial order and at trial, plaintiff's stated pur-

---

**6.** Wolfe and Pittenger summarize this examination of whether plaintiff's stated purpose is *bona fide,* stating, "This does not mean that inspection rights will necessarily be granted in response to all demands that recite a purpose that has been generally acknowledged as proper. It must appear that the stated purpose is the plaintiff's primary purpose and does not merely mask an actual intent to pursue ends unrelated to the plaintiff's equity investment." Donald J. Wolfe, Jr. and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 8–6(e)(1) (1998).

**7.** Del. Ch., 623 A.2d 85 (1992).

pose was unequivocally the inspection of books and records related to his concerns of mismanagement and corporate waste. Because plaintiff withdrew his books and records demands related to the abandoned merger, I cannot accept defendant's assertion that plaintiff's stated purposes are not *bona fide*.

Nor can I accept defendant's recitation of Carapico's history of litigation as proof that the present action is meritless or merely being pursued to harass defendant. While Carapico's relationship with the Exchange has been less than amicable, no direct evidence or convincing circumstantial evidence has been offered to suggest that his § 220 demand is being brought simply to harass. At trial, Carapico testified convincingly that he was having difficulty obtaining accurate information regarding changes that were occurring at the Exchange, changes that he feared were resulting from corporate mismanagement and leading to corporate waste.

## B. Is plaintiff's purpose proper under Delaware law?

■ "It is well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection."[8] Moreover, "the investigation of possible waste, mismanagement, or breach of fiduciary duty has been recognized as a purpose proper to warrant the inspection of corporate books and rec-

ords."[9] Because he bears the burden in this books and records action, Carapico was required to demonstrate by a preponderance of the evidence "some credible basis from which the court can infer that waste or mismanagement may have occurred."[10]

■ Carapico's purposes of investigating corporate mismanagement and waste met the threshold of specificity. While "[m]ere curiosity or a desire for a fishing expedition will not suffice,"[11] a purpose of investigating the misconduct identified in the SEC Order and the payment of severance benefits to officers or employees implicated in the SEC inquiry is sufficiently concrete. The SEC Orders contain detailed information reflecting possible corporate mismanagement. In addition trial testimony showed a credible basis to suspect mismanagement sufficient to justify some investigation.[12]

## C. Are plaintiff's requests overly broad?

■ Defendant, quoting language from *Security First Corporation v. U.S. Die Casting & Development Company*, argues that plaintiff "has failed to identify with the requisite 'rifled precision' the books and records that are necessary to satisfy his stated purposes."[13] Entitlement to inspection under § 220 for a stockholder demonstrating a proper pur-

---

**8.** *Security First Corp. v. U.S. Die Casting & Dev. Co.*, Del.Supr., 687 A.2d 563, 567 (1997).

**9.** Wolfe and Pittenger, *supra* note 6, § 8–6(e)(1).

**10.** *Thomas & Betts Corp.*, 681 A.2d at 1031.

**11.** *Security First Corp.*, 687 A.2d at 568.

**12.** The burden of proof "may be satisfied by a credible showing through documents, logic, testimony or otherwise, that there [exist] legitimate issues" of mismanagement or wrongdoing. *Security First Corp.*, 687 A.2d at 568.

**13.** 687 A.2d at 570. Defendant mistakenly relies on the referenced language for the proposition that plaintiff must state his demand with pinpoint specificity. I disagree. The *Security First Corp.* court was merely expressing criticism of an overly broad order entered by the Court of Chancery that it regarded more akin to a blunderbuss Rule 34 discovery request than the more narrowly focussed order required by § 220. Of course, a person making a § 220 demand is entitled to demand documents by category and will frequently not be in a position to demand specif-

pose "is not open-ended; it is restricted to inspection of the books and records needed to perform the task. Accordingly, inspection is limited to those documents that are necessary, essential, and sufficient for the shareholder's purpose."[14] Therefore, the order allowing plaintiff's requested books and records inspection will be limited to those documents reasonably required to satisfy the purpose of the demand.

I do note that plaintiff has requested books and records of both the Exchange and its wholly-owned subsidiaries. In deciding upon a similar request, this court held in *Skouras v. Admiralty Enterprises, Inc.*:

> Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity. Absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence.[15]

There is nothing in the record to justify ignoring the separate existence of the subsidiaries. Thus, the Final Order in this matter will be limited to books and records of the Exchange in its possession, custody, or control.

## IV. DEFINING THE LIMITS

With respect to plaintiff's first demand, I will exclude the reference to "employees, consultants, subcontractors and/or professionals" as overbroad. The evidence in the record reflects severance agreements or similar arrangements only with certain ex-

ecutives and officers. Moreover, the time period covered will be limited to January 1, 1997 to December 31, 1998. This period should sufficiently cover the SEC inquiry and its aftermath.

The second demand will be limited to correspond to scope and time period described in ¶ 1. Moreover, that demand will be limited to "the reports of "investigations or audits pertaining to the conduct" of persons identified in response to ¶ 1.

The third and fourth demands are overbroad as written. Among other things, the reference to the "current status" of the Clearing Corporation and the Depositary Company is vague and should be eliminated. I will allow plaintiff to inspect (i) current financial information of both corporations in the possession, custody or control of the Exchange, and (ii) reports presented to or minutes of meetings of the Exchange Board of Governors (or any committees or subgroups thereof) relating to (a) the SEC inquiry, (b) the decision to authorize the settlement of the SEC inquiry, or (c) the impact of the terms of the SEC Order on the business of the Exchange or any of its subsidiaries.

Paragraph 5 of the demand relates to an alleged failure on the part of the Exchange and its subsidiaries to monitor personal expenses of officers, employees, and/or Exchange governors. The trial record did not adequately establish a basis for this demand. Thus, it is denied.

## V. CONCLUSION

For all of the foregoing reasons, I will enter an Order granting the inspection

---

ic documents. What is required is that, at least where the purpose is to investigate particularized claims of mismanagement, the categories of documents be identified more narrowly and precisely than is typical in ordinary civil discovery.

**14.** *BBC Acquisition*, 623 A.2d at 88.

**15.** Del. Ch., 386 A.2d 674 (1978) (citations omitted). *See also, Landgarten v. York Research Corporation*, C.A. No. 8417, 1988 WL 7392, at *4, Berger, V.C. (Feb. 3, 1988) (Mem. Op.) (stating in a § 220 action, "Normally, the separate corporate existence of a subsidiary will not be disregarded.... Rather, there must be a showing of fraud or that the subsidiary is the 'alter ego' of the parent").

demanded to the extent described in this opinion. Plaintiff's counsel should submit an Order on notice within 10 days.