# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM T. OBEID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2017-0510-JTL |
| | ) | |
| GEMINI REAL ESTATE ADVISORS, LLC | ) | |
| and GEMINI EQUITY PARTNERS, LLC, | ) | |
| Delaware Limited Liability Companies, | ) | |
| | ) | |
| Defendants. | ) | |

## POST-TRIAL RULING

1. The plaintiff sought books and records. A one-day trial took place on March 12, 2018. The evidence supported the following factual findings:

    a. Defendant Gemini Real Estate Advisors, LLC (the "Company") is a Delaware limited liability company. Through special purpose entities and fund vehicles, it acquires, develops, finances, and operates commercial real estate investments. The internal affairs of the Company are governed by its Amended and Restated Limited Liability Company Agreement (the "Company LLC Agreement"). Plaintiff William T. Obeid and non-parties Christopher La Mack and Dante Massaro are the Company's only members, with each holding a 33.333% membership interest. Obeid, La Mack, and Massaro are also the three managers of the Company. Under the Company LLC Agreement, the Company's managers can designate an Operating Manager with authority to conduct the day-to-day operations of the Company. Obeid served as the Company's Operating Manager from the Company's inception until disputes arose between Obeid and his fellow managers.

1

b.      Defendant Gemini Equity Partners, LLC ("Gemini Partners") is a Delaware limited liability company. On paper, it appears to own and manage Company-affiliated assets. In practice, Gemini Partners is a holding company. The Company manages all of Gemini Partners' assets and maintains custody and control over all of its records. Gemini Partners' internal affairs are governed by its Limited Liability Company Agreement (the "Partners LLC Agreement"). Obeid, La Mack, and Massaro are the only members of Gemini Partners with each holding a 33.333% membership interest. Under the Partners LLC Agreement, a board of directors governs Gemini Partners. Obeid, La Mack, and Massaro served as directors from Gemini Partners' inception until disputes arose between Obeid and his fellow directors.

c.      Section 8.6.1 of the Company LLC Agreement states:

The Company shall maintain the Company's books and records and shall determine all items of Income, Loss, Net Income and Net Loss in accordance with the method of accounting selected by a Majority in Interest of the Members, consistently applied. All of the records and books of account of the Company, in whatever form maintained, shall at all times be maintained at the principal office of the Company and shall be open to the inspection and examination of the Members or their representatives during reasonable business hours. Such right may be exercised through any agent or employee of a Member designated by it or by an attorney or independent certified public accountant designated by such Member. Such Member shall bear all expenses incurred in any examination made on behalf of such Member.

d.      William Stelma served as the senior executive at the Company with responsibility for its finances from 2010 until January 2018, when he ceased being a full-time employee. He is currently a Company consultant and remains responsible for all of the accounting functions for the Company and all of its affiliates.

2

e. The Company maintains general ledgers for its affiliates using a software platform provided by Yardi Systems, Inc. (the "Yardi Database"). All of the non-accounting information for those affiliates, such as organizational documents, tax returns, investor reports, and property records is maintained on the Company's cloud-based server. Obeid, La Mack, Massaro, and Stelma historically had access to the Yardi Database.

f. On July 1, 2014, La Mack and Massaro voted to remove Obeid as the Company's Operating Manager and replace him with Massaro. That same day, La Mack and Massaro sued Obeid in North Carolina state court. Later that month, La Mack and Massaro terminated everyone's access to the Yardi Database, except for Stelma.

g. On June 27, 2017, Obeid demanded information under Section 18-305 of the Delaware Limited Liability Company Act and Section 8.6.1 of the Company LLC Agreement. The defendants refused to provide it, prompting Obeid to file this action.

h. On December 4, 2017, Obeid supplemented his demand to seek "any Excel-based workbooks prepared by William Stelma on behalf of [the Company] that calculate the investor returns and Manager promote fees owed as a result of the sales of assets owed by the fund entities." He also asked that "modifications, additions or deletions to such Excel workbooks be immediately furnished [as they] become available to [the Company] or its agents or representatives." Obeid amended his complaint to incorporate his supplemental demands. Beginning on March 2, 2018, the defendants produced a series of spreadsheets responsive to the supplemental request.

i. By the time of trial, the scope of information in dispute had narrowed to the following:

3

Any updated versions of Exhibits 1-6 to JX 115 (the March 2, 2018 Affidavit of William Stelma) . . . ;

Any Excel workbook prepared on behalf of [the Company] that summarizes the distributions to investors in the [Company's fund entities], or fees earned by [the Company] as manager of [those entities], and/or which forecasts such distributions and fees (*e.g.*, any current workbook comparable to JX 116 or JX 117); and,

Read-only access to [the Company's] Yardi [D]atabase with sufficient permission to view the individual accounts for [the Company], Gem Hotel Union Square, LLC, Gemini 305 West 39th Street, LLC, Gemini Fund 5, LLC, Gemini New York Hospitality Fund, LLC, Gemini NYC Hotel, LLC, Gemini Opportunity Fund I, LLC, Gemini Opportunity Fund III, LLC, and Gemini Opportunity Fund IV, LLC from March 1, 2016 forward.

Dkt. 78 at 35. This order refers to this material as the "Disputed Information."

2.      Obeid is entitled to the Disputed Information in his capacity as a manager of the Company. Under Section 18-305(b), "[e]ach manager shall have the right to examine all of the information described in subsection (a) of this section for a purpose reasonably related to the position of manager." 6 *Del. C.* § 18-305(b). In addition to other categories of information, Section 18-305(a) affords members access to "[t]rue and full information regarding the status of the business and financial condition of the limited liability company." 6 *Del. C.* § 18-305(a)(1).

a.      The language in Section 18-305(b) "is tantamount to that used in 8 *Del. C.* § 220 with respect to director requests for corporate information." *RED Capital Inv. L.P. v. RED Parent LLC*, 2016 WL 612772, at *4 (Del. Ch. Feb. 11, 2016); *see also, e.g.*, *Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at *5 (Del. Ch. Aug. 30, 2016) ("[T]his Court treats Section 220, and the cases interpreting it, as the corporate analogue to inspection rights under Section 18-305 of the LLC Act.").

4

b.     "The rights of directors to access the corporate books and records are recognized by Delaware law as of fundamental importance and a necessary concomitant to the imposition upon directors of fiduciary duties." *Holdgreiwe v. Nostalgia Networks, Inc.*, 1993 WL 144604, at \*3 (Del. Ch. Apr. 29, 1993) (Allen, C.). "[T]he Court works from the presumption that a sitting director is entitled to unfettered access to the books and records of the corporation for which he sits and certainly is entitled to receive whatever the other directors are given." *Intrieri v. Avatex Corp.*, 1998 WL 326608, at \*1 (Del. Ch. June 12, 1998); *accord Kortum v. Webasto Sunroofs, Inc.*, 769 A.2d 113, 118 (Del. Ch. 2000).

c.     The parties have stipulated that Obeid is a manager of the Company, so he has made out a *prima facie* case for access. The defendants therefore had to carry the "rather substantial burden of proving that the plaintiff's demand to inspect books and records in his capacity as a . . . manager is not motivated by a proper purpose." *Bizzari*, 2016 WL 4540292, at \*1. "[T]he mere prospect of harm to a corporate defendant" does not satisfy the burden. *Compaq Comput. Corp. v. Horton*, 631 A.2d 1, 4 (Del. 1993). Rather, the defendant must produce "concrete evidence" that the requesting fiduciary "will use privileged information to harm the Company in violation of his fiduciary duties." *Kalisman v. Friedman*, 2013 WL 1668205, at \*5 (Del. Ch. Apr. 17, 2013); *see also Bizzari*, 2016 WL 4540292, at \*1 (declining to allow broad access where "the defendant entities convincingly established that the plaintiff has engaged in efforts to compete with, and inflict reputational harm on, the entities").

d.     The defendants assert that Obeid has an improper purpose because he has historically "interfered" with the Company's "ongoing business operations through

5

preventing the sale of certain assets" it owned. Dkt. 80 ¶ 28. They note that Obeid has on one prior occasion caused notices of pendency to be filed against certain of the Company's properties. This single prior act in the course of active litigation does not demonstrate that Obeid will use the Disputed Information to damage the Company.

e. The defendants similarly assert that Obeid improperly used computer monitoring software installed on the Company's computers in furtherance of the ongoing litigation between him and the other managers. Whether that occurred or was improper are questions pending before a New York federal court in a separate action. Obeid maintains that he did not do anything improper. Regardless, on the facts presented, I find that this act (assuming it occurred) would not be sufficient to warrant denying information to Obeid at this juncture.

f. The defendants point to other, ongoing litigation between the parties and assert that Obeid is improperly using this action to circumvent the discovery process in other proceedings. In this case, Obeid has agreed to the terms of a confidentiality order. Any attempt by Obeid to use the information he obtains in other litigation would require approval both from this court and the court overseeing the litigation. Far more would be needed to support a claim of an improper purpose. *See, e.g., Compaq*, 631 A.2d at 5; *Carapico v. Phila. Stock. Exch., Inc.*, 791 A.2d 787, 792 (Del. Ch. 2000).

g. Based on the evidence presented, the defendants have failed to carry their "substantial burden" to demonstrate that Obeid has an improper purpose for seeking information.

3. The defendants have raised other defenses to Obeid's request.

6

a.      The defendants assert that because neither of the other managers—La Mack or Massaro—currently has access to the Yardi Database, neither should Obeid. This argument is disingenuous. Although neither La Mack nor Massaro have direct access via login credentials, they have ready access through Stelma. Obeid is entitled to a similar level of access.

b.      The defendants also contend that they already provided Obeid with all of the information he needs to discharge his duties. This is not a valid defense. Obeid "is a fiduciary and in order to meet his obligation as such he must have access to books and records; indeed he often has a duty to consult them." *Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 128 (Del. Ch. 1969). The court will not second-guess Obeid's business judgment about the information that he needs. Unlike a stockholder, a director is not limited to information that is necessary and essential to a proper purpose. A director's right of access is "essentially unfettered in nature." *Kalisman*, 2013 WL 1668205, at *3 (quoting *Schoon v. Troy Corp.*, 2006 WL 1851481, at *1 n.8 (Del. Ch. June 27, 2006); *accord Intrieri*, 1998 WL 326608, at *1. Absent validly imposed contractual limitations, a manager of an LLC has similarly broad access.

4.      Obeid is also entitled to the books and records he seeks under Section 8.6.1 of the Company LLC Agreement. That section states, in relevant part: "All of the records and books of account of the Company, in whatever form maintained . . . shall be open to the inspection and examination of the Members or their representatives during reasonable business hours." The parties have stipulated that Obeid is a member; it follows that he is entitled to "inspect and examine" the Company's "records and books of account."

7

a.     The defendants have not advanced any argument that the information Obeid seeks does not constitute "records and books of account" of the Company. *See Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, 2002 WL 205681, at *3 (Del. Ch. Jan. 29, 2002) (reading broadly reference in LLC agreement to "books of account" and "records"). Obeid is therefore entitled to this information.

b.     The defendants again argue that Obeid has an improper purpose. Absent express language to the contrary, "[t]he implied covenant of good faith and fair dealing . . . gives rise to an improper purpose defense" to a contractual right to books and records. *Wall Props. MLP v. Vanta Commercial Props. LLC*, 2015 WL 298294, at *2 (Del. Ch. Jan. 22, 2015) (ORDER); *accord Arbor Place*, 2002 WL 205681, at *4 n.9. To invoke this affirmative defense successfully, the defendants bear the burden of demonstrating that "the [member] seeking access is doing so for a purpose personal to that [member] and adverse to the interest of the [LLC] considered jointly." *Wall Props.*, 2015 WL 298294, at *2 (alterations in original) (quoting *Madison Real Estate Immobilien-Anlagegesellschaft Beschrankt Haftende KG v. Kanam USA XIX Ltd. P'ship*, 2008 WL 1913237, at *13 (Del. Ch. May 1, 2008)). For the same reasons that the defendants failed to carry their burden to show that Obeid has an improper purpose as a manager, they also have failed to show that he has an improper purpose as a member.

c.     Obeid is entitled to the books and records he seeks under the Company LLC Agreement.

5.     The Company uses the Yardi Database to maintain books and records of its affiliates, but this does not negate Obeid's right of access. The evidence established that

8

the Company "is holding the books of the subsidiar[ies] or has control or possession over those books." *Salovaara v. SSP Inc.*, 2001 WL 36502192, at *3 (Del. Ch. Jan. 10, 2001) (ORDER). The various affiliates share the same address with the Company and use the same computer system. None of the affiliates have employees or infrastructure of their own; they rely on the Company and its representatives to carry out their management functions. Their operating agreements acknowledge that the Company has "a fiduciary responsibility for the safekeeping and use of all [of their] funds and assets." *See, e.g.*, JX 1 § 7.5.1; JX 2 § 7.5.1; JX 4 § 6.5.1. "Such unity of control and management composition is sufficient to subject operating subsidiary information to a proper request by a parent Manager in accordance with Section 18-305(b)." *RED Capital*, 2016 WL 612772, at *5.

6.      In light of the foregoing analysis, this order need not determine whether Obeid has a statutory right to the books and records as a member.

7.      Within ten days, the parties shall submit a final order that is agreed upon as to form. If there are issues that the court needs to address before it can enter the final order, then the parties shall submit a joint letter within five days that identifies those issues and a path for bringing this case to conclusion at the trial level.

Vice Chancellor J. Travis Laster
Dated: June 5, 2018

9