1999 SD 89

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Carl HAYS, Defendant and Appellant.**

No. 20628.

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Opinion Decided July 14, 1999.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for plaintiff and appellee.

James E. Mcculloch, Vermillion, for defendant and appellant.

SABERS, Justice

[¶ 1.] Carl Hays was convicted by a Clay County jury of aiding, abetting or advising third degree burglary (SDCL 22–32–8 and 22–3–3); aiding, abetting or advising arson (SDCL 22–33–4 and 22–3–3); and conspiracy to commit arson (SDCL 22–3–8). He appeals and we affirm.

**FACTS**

[¶ 2.] Hays and his father jointly owned a bar in Clay County, South Dakota called CJ's Corner.[1] On May 27, 1996, the bar was destroyed by fire. The building was insured for $19,000 and the contents for $26,000. Hays reported the fire to his insurance agent the day after the fire, although he did not make a formal claim. However, the insurance company proceeded as though he had made a claim. A claims examiner reviewed the claim and felt the fire was suspicious. He asked for a proof of loss form signed by Hays. Hays never filed the proof of loss form. Hays

---

1. The bar was also known as the Seven Mile Station and Riverside Station.

claimed that he did not think he had insurance coverage because he had received several notices threatening cancellation due to failure to pay premiums.[2] However, the insurance agent testified that there was coverage at the time of the fire.[3]

[¶ 3.] Law enforcement investigated the cause of the fire and found that the physical evidence was inconsistent with an accidental fire. A circular burn mark in the carpet and floor was found between the bar and the coolers. Fire investigators testified that they believed the fire started in that area or within a few feet of that area. A lack of smoke discoloration was noted above the external windows and doors which indicated the fire was deliberately started. An accidental fire will generally smolder before it breaks into flames and leave discoloration on the windows and doors.

[¶ 4.] Eventually police arrested Hays and Joseph Barr. Barr was employed by Hays at a canopy business. Barr testified at trial[4] that, on the afternoon of May 26, 1996, Hays asked him to burn the bar. He stated that Scott Sere, manager of the bar, was present when this conversation occurred at Hays' house. Barr and Sere then drove to the bar in a service truck owned by Hays. Sere bartended and Barr sat at the bar and drank until the bar closed at midnight. Sere helped Barr remove the big screen television and place it in the truck. They placed a smaller television in its place. Apparently forty cases of beer were also removed and taken to Hays' house. Both Barr and Sere[5] testified that they were following Hays' instructions. Barr then reentered the bar while Sere waited in the truck. Barr testified that he placed a garbage can containing cardboard between the bar and the coolers and ignited the cardboard. Barr waited outside until the fire was well established and then he and Sere drove to a nearby town where they placed the big screen television in a storage unit rented by Hays.

[¶ 5.] Hays admitted at trial that he asked Barr to burn the bar, but denied that he intended to make an insurance claim. He claimed that he did not think he had insurance coverage. He also maintained that he did not need the insurance money, despite admitting he was currently involved in a bankruptcy proceeding. Hays also claimed that he wanted the bar burned because he was involved in a divorce and did not want his wife to get the property.

[¶ 6.] A jury trial was held on December 22, 1997. The jury found Hays guilty of all three counts. Hays appeals, claiming: 1) that either his pretrial motion to dismiss the indictment for aiding, abetting, or advising burglary or his motion for judgment of acquittal on same should have been granted because an owner cannot burglarize his own property and that his objection to a jury instruction regarding an owner's consent to enter a structure should have been granted; 2) ineffective assistance of counsel; and 3) violation of the 180–day rule.

[¶ 7.] **1. WHETHER HAYS CAN BE CONVICTED OF AIDING, ABETTING, OR ADVISING THE BURGLARY OF PROPERTY IN WHICH HE HAS AN OWNERSHIP INTEREST.**

[¶ 8.] Hays claims that he cannot be convicted of aiding, abetting, or advising

2. At least one cancellation notice was sent to Hays prior to the fire. Apparently, Hays either failed to pay a premium or paid the premium with an insufficient funds check. The letters from the insurance company indicated that cancellation would occur if payment was not received by a certain date.

3. Hays' parents paid the premium after the fire. At trial, Hays claimed he was unaware that his parents paid the premium, but he was inconsistent regarding when he became aware of it. He claimed his parents did so because of liability concerns.

4. Hays and Barr were to be tried together. However, Barr accepted a plea agreement before trial and testified for the State.

5. Sere testified at trial under an immunity agreement with the State.

the burglary of his own property.[6] He made a pretrial motion to dismiss the burglary charge and moved for judgment of acquittal of same based on this argument. He also objected to a jury instruction which stated that the owner's consent to enter a structure is not a defense to burglary. This presents a question of law which we review de novo. *State v. Shadbolt*, 1999 SD 15, ¶ 10, 590 N.W.2d 231, 233 (citations omitted).

[¶ 9.] We have previously looked to California law for guidance in interpreting our burglary statute. *Matter of T.J.E.*, 426 N.W.2d 23, 24 (S.D.1988). A review of that state's law reveals some merit to Hays' arguments. *See People v. Felix*, 23 Cal.App.4th 1385, 28 Cal.Rptr.2d 860, 867 (Cal.App. 4 Dist.1994) (stating: "There are occasions when consent given by the owner of the property will constitute a defense to a burglary charge. For example, when the accused *is* the owner of the property or when the owner *actively* invites the accused to enter, *knowing* the illegal, felonious intention in the mind of the invitee."). *See also People v. Gauze*, 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365, 1369 (Cal 1975) (holding that defendant could not be guilty of burglarizing his own home).

■ [¶ 10.] However, we need not reach these arguments because here Hays was not the sole owner of the property. Hays and his father were joint tenants. Hays could not consent to the burglary of his father's interest in the property. *See People v. Clayton*, 65 Cal.App.4th 418, 76 Cal. Rptr.2d 536, 539 (Cal.App. 2 Dist.1998) (involving a husband who gave defendant consent to enter jointly owned home to

murder wife; court held that husband's consent was not defense to burglary charge); *Davis v. State*, 611 So.2d 906, 911–12 (Miss.1992) (holding that husband could not give consent for co-defendant to enter the home to rape and rob wife).

[¶ 11.] The joint ownership of the property is crucial to the analysis. Burglary requires an entry of a dwelling with the intent to commit a crime. SDCL 22–32–8. In this case, the "crime" was charged in part by the State to be arson, SDCL 22–33–3. To commit arson under SDCL 22–33–3, the defendant must "intentionally and without *all* of the owners' consent" set fire to an unoccupied structure. (Emphasis added). If Hays were the sole owner of the property and had consented to the burning of the building by ordering Barr to burn it, there could be no arson under SDCL 22–22–3 and thus no aiding or abetting of burglary under SDCL 22–32–8. However, Hays was not the sole owner and his father did not consent to the burning of the building. Therefore, we affirm the conviction for aiding, abetting, or advising burglary. Hays has not shown it was error for the trial court to instruct the jury that consent of the owner is not a defense to burglary.

[¶ 12.] **2. WHETHER HAYS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.**

[¶ 13.] Hays argues he received ineffective assistance of counsel, claiming that: 1) trial counsel failed to make a pretrial motion to dismiss the conspiracy to commit arson charge based on an insufficient pleading of "overt acts" in the indictment; 2) trial counsel failed to make a motion for

---

6. SDCL 22–32–8 provides:
   > Any person who enters an unoccupied structure, with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, or remains in an unoccupied structure after forming the intent to commit any crime other than shoplifting as described in chapter 22–30A constituting a misde-

   meanor, is guilty of third degree burglary. Third degree burglary is a Class 4 felony.
   SDCL 22–3–3 provides:
   > Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets or advises another person in planning or committing the crime, is legally accountable, as a principal to the crime.

judgment of acquittal due to the lack of "overt acts" proof offered at trial; 3) trial counsel failed to propose an accomplice pattern jury instruction; 4) trial counsel failed to cross-examine regarding Barr's plea agreement or prior criminal record; 5) trial counsel failed to make a motion for a judgment of acquittal based on insufficient corroborative evidence of intent to defraud an insurer; and 6) trial counsel failed to object to testimony elicited from Hays on cross-examination as violating attorney-client privilege and hearsay.

[¶ 14.] We have consistently held that ineffective assistance of counsel claims will not be considered on direct appeal. *State v. McGill*, 536 N.W.2d 89, 94 (S.D. 1995) (citing *State v. Petersen*, 515 N.W.2d 687, 688 (S.D.1994); *State v. Sonen*, 492 N.W.2d 303, 304 (S.D.1992); *State v. Wurtz*, 436 N.W.2d 839, 842 (S.D.1989)). "However, an exception exists where the defense at trial was so ineffective and counsel's representation 'so casual' as to represent a 'manifest usurpation' of [the defendant's] constitutional rights." *McGill*, 536 N.W.2d at 94 (alterations in original) (citing *State v. White Mountain*, 477 N.W.2d 36, 39 (S.D.1991) (citing *State v. Jett*, 474 N.W.2d 741, 742–43 (S.D. 1991))). While there may be some merit to Hays' claims, they should be raised in a habeas corpus proceeding where they can be fully developed and countered by trial counsel, as necessary. Therefore, we decline to address Hays' ineffective assistance of counsel claims.

[¶ 15.] **3. WHETHER THE 180–DAY RULE WAS VIOLATED.**

[¶ 16.] Hays claims that he is entitled to a dismissal because his trial was not commenced within 180–days of his first appearance on the indictment. However, Hays failed to raise this issue below and brings it for the first time on appeal. Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level. *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763 (citations omitted).

"The trial court must be given an opportunity to correct any claimed error before we will review it on appeal." *Id.* (quoting *State v. Heftel*, 513 N.W.2d 397, 401 (S.D. 1994) (citations omitted)). Even a fundamental right may be waived if not raised below. *Henjum*, 1996 SD 7 at ¶ 13, 542 N.W.2d at 763. The 180–day rule is "a rule of court, not a constitutional requirement." *State v. Fowler*, 1996 SD 79, ¶ 11, 552 N.W.2d 391, 393 (citations omitted). Hays may raise this claim in a habeas corpus proceeding as part of an ineffective assistance of counsel claim. However, he waived this issue for direct appeal by failing to raise it before the trial court.

[¶ 17.] Therefore, we affirm.

[¶ 18.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

