2004 SD 108

**STATE of South Dakota, Plaintiff And Appellee,**

v.

**Thor John SORENSEN, Defendant And Appellant.**

No. 22852.

Supreme Court of South Dakota.

Argued April 28, 2004.

Reassigned July 12, 2004.

Decided Sept. 29, 2004.

Lawrence E. Long, Attorney General, Jeffrey J. Tronvold, Frank E. Geaghan, Assistant Attorneys General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Lucille M. Lewno, Yankton Public Defender, Yankton, South Dakota, Attorneys for defendant and appellant.

KONENKAMP, Justice (on reassignment).

[¶1.] Defendant was convicted of possession of methamphetamine. The seizure of the methamphetamine occurred when a warrant was issued to search for stolen property at a residence. In addition to the home, the warrant authorized a search of "all vehicles parked on the property." When officers arrived to execute the search warrant, the vehicle in which defendant was a passenger was parked in the driveway. A search of the vehicle uncovered illegal drugs. The circuit court declined to suppress the evidence. We need not reach the question whether the "all vehicles" provision in the warrant was overbroad because the good faith exception to the exclusionary rule applies here, making the seized evidence admissible.

## Background

[¶2.] In a theft report, Amanda Hoffman told police that she had taken her CD case containing approximately 240 CDs with her while riding in Leyna Luzier's vehicle. Luzier and Nicholas Leitch got out of the car and went into Luzier's home. Unknown to Hoffman, Leitch took the CD case with him. When Hoffman asked Luzier what had happened to the case, Luzier told her that Leitch had taken it into the house and when he left, the case and CDs "were gone." Hoffman described the CD case to the police. During the investigation, a witness told Officer Jeff Sorensen that she had seen Leitch and Joshua Gratzfeld in Gratzfeld's bedroom with the stolen CDs and the case at 2408 Cedar Terrace, Yankton, South Dakota, where Gratzfeld resided. The witness reported seeing the two individuals "going through a compact disk case, throwing out one they did not want."

[¶3.] In support of his request for a search warrant, Officer Sorensen submitted an affidavit reiterating the information he received from the witnesses concerning the theft and the location of the stolen

items.[1] The officer requested a warrant to search the residence at 2408 Cedar Terrace and "all vehicles parked on the property." The Clerk Magistrate issued the search warrant as requested.

[¶ 4.] Officers Sorensen and Mike Burgeson went to the residence to execute the warrant. When they arrived, an automobile was parked in the driveway. Defendant, Thor John Sorensen, was a passenger. Gratzfeld was standing in the driveway next to the passenger window. The officers pulled in behind the vehicle, got out, and had a conversation with Gratzfeld. Officer Burgeson told defendant that they had a search warrant and that the vehicle was going to be searched. Despite protests from defendant and another passenger, the vehicle was searched. Burgeson spotted a CD case on the passenger side floor partially under the seat. The case was different from the one Hoffman reported as stolen. On unzipping the case, Burgeson found what appeared to be illegal substances and drug paraphernalia inside. Defendant later admitted his use of the methamphetamine in the CD case.

■ [¶ 5.] In circuit court, defendant moved to suppress. He claimed that, under the search warrant affidavit, no proba-

1. The Officer's affidavit consisted of the following:

(1) On September 21, 2002 at approximately 2355 hours Yankton Police Officer Jeff Johnson took a theft report from Amanda Hoffman in the lobby of the Safety Center, 410 Walnut in Yankton, South Dakota.

(2) Amanda told Officer Johnson that she had been in a vehicle with Leyna Luzier and Nicholas Leitch and she had brought her compact disk case with approximately 240 compact disks along so they would have music to listen to. Amanda said she was let out of the car while Leyna and Nicholas went to Leyna's residence at 2310 Cedar Terrace.

(3) When Amanda later asked Leyna where the compact disks were, Leyna told Amanda that Nicholas had taken the compact disk case out of the car and brought it into Leyna's residence. Then a little while later Nicholas left and the compact disks were gone.

(4) Officer Johnson spoke with Leyna about the compact disks and she told him the same thing, that Nicholas had taken the case from her car, brought it into her house and later he and the case were gone.

(5) Amanda said she had already spoken to Nicholas about the missing case and compact disks. Nicholas had told her he did not know where the case was and that it must have gotten lost.

(6) Amanda described the case as nylon, approximately 16" × 16" square, black in color with some faded marker writings on the outside resembling a "peace" sign. The compact disks themselves were marked with a rectangular white mark and she estimated the loss at $3,700.

(7) On September 22, 2002 at approximately 2015 hours, I, Officer Jeff Sorensen, received a phone call at the police station from Amanda Hoffman. Amanda told me that [T.G.] had told her that she had witnessed Nicholas Leitch and Joseph Gratzfeld going through a compact disk case, throwing out one they did not want a "Christina Aguilera" compact disk which she owned.

(8) Amanda said after hearing this she again confronted Nicholas about the disks and he told her he had already taken a lie detector test at the police station about the disks.

(9) On September 22, 2002 at approximately 2135 hours, I, Officer Jeff Sorensen, spoke with [T.G.] at the police station about the missing compact disks. [T.G.] told me that on September 21, 2002 at approximately 1400 hours she was at 2408 Cedar Terrace, with Joshua Gratzfeld and Nicholas Leitch in Joshua's basement bedroom. [T.G.] said she saw Joshua going through a dark compact disk case checking the compact disks. [T.G.] said she saw there were white rectangular tabs on the compact disks and the case was approximately 16" × 16" in size. [T.G.] said she heard Joshua say "Christina Aguilera" as he removed a compact disk from the case and set it aside. [T.G.] said she was too far away from the case to see if there was any writing on it and she last saw it as Joshua was putting it in the closet of the bedroom.

ble cause was shown to issue a search warrant for "all vehicles" on the premises. The trial court denied the motion. Defendant was found guilty of possession of methamphetamine in violation of SDCL 22–42–5 and SDCL 34–20B–16(6). On appeal, he contends that there was insufficient probable cause to justify an "all vehicles" provision in the search warrant.[2]

[¶ 6.] Defendant's challenge is based on the Fourth and Fourteenth Amendments of the United States Constitution and Article VI § 11 of the South Dakota Constitution. Under the Fourth amendment, the people are "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause, ... and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 799, 157 L.Ed.2d 769 (2003) (emphasis added).

■ [¶ 7.] Although we have not previously reviewed an "all vehicles" search warrant, we have approved of an "all persons" provision in a warrant. *State v. Jackson*, 2000 SD 113, ¶ 14, 616 N.W.2d 412, 417. Such a warrant can only issue if the supporting affidavit shows a sufficient nexus between "the criminal activity, the place of the activity, and the persons in the place." *Id.* ¶ 15. As this Court said in *Jackson:*

> The question, therefore, is whether the affidavit gave sufficient particularity to conclude that there was good reason to believe that anyone present would probably be a participant in the illegal [] activities.... The key to assessing an "all persons" warrant is to examine whether there was a "sufficient nexus among the criminal activity, the place of the activity, and the persons in the place to establish probable cause."

*Id.* A similar analysis might well apply to an "all vehicles" warrant.[3] However, we need not reach the question whether probable cause existed to authorize an "all vehicle" search here.

■ [¶ 8.] Even if the warrant was overbroad, the evidence seized under its authority need not be excluded. Suppression of evidence is not a personal constitutional right, but a judicially created remedy to deter constitutional violations by government officials. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984).[4] In *State v. Boll*, we quoted *Leon*, explaining:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.

---

2. For the first time on appeal, the State questions defendant's standing to challenge the search warrant. When an issue was not raised at the trial court level, we will not ordinarily address it on appeal. *State v. Hays*, 1999 SD 89, ¶ 16, 598 N.W.2d 200, 203. The only issue before us is defendant's challenge of the "all vehicles" provision of the search warrant.

3. For a case that has specifically upheld an "all vehicle" search warrant in a residence search, *see, e.g., People v. Juarez*, 770 P.2d 1286 (Colo.1989).

4. The good faith exception was recognized in both *Leon* and *Massachusetts v. Sheppard*, 468 U.S. 981, 988, 104 S.Ct. 3424, 3427–28, 82 L.Ed.2d 737 (1984). *Leon* held that evidence can be used in the prosecution's case when obtained by officers using a search warrant later found to be lacking probable cause if they acted in the objective good faith belief that the warrant was valid and that it was issued by a neutral and detached magistrate. *Sheppard* held that evidence seized under a warrant defective on its face is nonetheless admissible when the officer executing the warrant was the one who requested it.

By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care towards the rights of an accused.

2002 SD 114, ¶ 37, 651 N.W.2d 710, 720 (quoting 468 U.S. at 919, 104 SCt at 3418). Because the goal of deterrence will not always be advanced by excluding relevant, though illegally seized, evidence, the Supreme Court has identified several exceptions to the exclusionary rule.

 [¶ 9.] Under the "good faith" exception, "evidence is admissible when police officers reasonably rely on a warrant that is subsequently invalidated because a judge finds there was an insufficient basis for the issuing magistrate to find probable cause." *State v. Saiz*, 427 N.W.2d 825, 828 (S.D.1988). When reviewing suppression rulings, we have the discretion to proceed directly to the good faith question without first deciding the issue of probable cause.[5] We examine the good faith exception *de novo*. *United States v. LaMorie*, 100 F.3d 547, 555 (8thCir.1996); *State v. Belmontes*, 2000 SD 115, ¶ 26, 615 N.W.2d 634, 641 (Konenkamp, J., concurring in result).

 [¶ 10.] In *Leon*, the Supreme Court identified four situations in which the good faith exception to the exclusionary rule would not apply. First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false but for the affiant's reckless disregard for the truth. Second, the exception will not apply when the issuing magistrate wholly abandons the judicial role. Third, the good-faith exception will not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Thus, the exception does not extend to situations in which the officer obtains a warrant based on a "bare bones" affidavit and then relies on good faith execution by innocent colleagues in order to sustain the warrant. *Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24. Fourth, the exception will not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. The *Leon* rule will not exclude evidence, however, when an officer's reliance on a technically sufficient warrant is objectively reasonable. *Id.* at 922, 104 S.Ct. at 3420.

[¶ 11.] As to the first and second circumstances, there is no indication here that Officer Sorensen willfully or recklessly omitted pertinent information from the affidavit, or that the issuing magistrate was misled by any omission or misrepresentation, or that she wholly abandoned her judicial role. As to the third situation, there is no indication that the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in the existence of probable cause completely unreasonable. The affidavit in this case is far from what *Leon* envisioned as a affidavit so bereft of proba-

---

5. *Leon*, 468 U.S. at 923–24, 104 S.Ct. 3405; see also, e.g., *United States v. Zayas–Diaz*, 95 F.3d 105, 115 (1stCir.1996); *United States v. Cancelmo*, 64 F.3d 804, 807–08 (2dCir.1995); *United States v. Williams*, 3 F.3d 69, 74 (3d.Cir.1993); *United States v. Edwards*, 798 F.2d 686, 690 & n2 (4thCir1986); *United States v. Loe*, 248 F.3d 449, 460–62 (5thCir.2001); *United States v. Chaar*, 137 F.3d 359, 363–65 (6thCir.1998); *United States v. Fairchild*, 940 F.2d 261, 264 (7thCir.1991); *United States v. Taylor*, 119 F.3d 625, 628 (8thCir.1997), *cert. denied*, 522 U.S. 962, 118 S.Ct. 394, 139 L.Ed.2d 308 (1997); *United States v. Fowlie*, 24 F.3d 1059, 1067 (9thCir.1994); *United States v. Bishop*, 890 F.2d 212, 216 (10thCir.1989).

ble cause that it could not support issuance of a warrant notwithstanding good faith on the part of the executing officers.

■ [¶ 12.] On the fourth circumstance, our "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. This determination is to be made taking into account all the circumstances, and assuming that the executing agents "have a reasonable knowledge of what the law prohibits." *Id.* at 920 n. 20, 104 S.Ct. at 3419 n. 20. Here, this exception does not apply because the warrant was not so facially deficient in failing to particularize the place to be searched or the things to be seized so that no officer could reasonably rely upon it. *Id.* at 923, 104 S.Ct. at 3421. We think the officers acted reasonably in assuming the validity of the warrant provision allowing a search of "all vehicles parked on the property." The warrant authorized a search for compact disks that had been stolen from a car. It would not be farfetched to conclude that such items could again be transferred to other cars after they were divvied up by the two suspects.

[¶ 13.] When Officer Sorensen was asked at the suppression hearing why he included the request for a search of "all vehicles" on the premises, he gave this explanation:

> When I first learned of information that the stolen CD case and CDs that we were looking for had been seen in the residence of 4208 Cedar Terrace—three days had past before I learned that information and in those three days, I felt that—that the CDs could have been moved from the location from where they were last seen to a vehicle very easily as that's why they are in a CD case, so they can be transported to a car, to a house, back to a car, wherever they would be needed to be played.

That the stolen CDs might be found in a car on the premises is a logical deduction. Many automobiles have installed CD players. That the stolen CDs could be transferred to other CD cases is also logical. After all, CD cases exist specifically so that CDs can be easily transported from place to place. The witness who last saw the stolen CDs reported that they were being sorted by the suspects. These particulars are all the law requires for good faith. Indeed, as the United States Supreme Court explained, " '[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " *Id.* at 922, 104 S.Ct. at 3420 (internal citations omitted).

[¶ 14.] Many courts have reasoned that a vehicle found on the premises is considered included within the scope of a warrant authorizing a search of that premises if the objects of the search might be located in a vehicle. *United States v. Patterson,* 278 F.3d 315, 318 (4thCir.2002); *United States v. Singer,* 970 F.2d 1414, 1417–18 (5thCir.1992); *United States v. Gottschalk,* 915 F.2d 1459, 1461 (10thCir.1990); *United States v. Griffin,* 827 F.2d 1108, 1111–14 (7thCir.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988); *United States v. Asselin,* 775 F.2d 445, 446–47 (1stCir.1985); *United States v. Bulgatz,* 693 F.2d 728, 731–32 (8thCir.1982), *cert. denied* 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 444 (1983); *United States v. Freeman,* 685 F.2d 942, 955 (5thCir.1982) (warrant for search of premises justifies search of jeep parked on premises); *United States v. Napoli,* 530 F.2d 1198, 1200 (5thCir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287

(1976). *See also State v. Musselwhite*, 402 So.2d 1235, 1237–38 (Fla.Dist.Ct.App.1981) (vehicles within curtilage are proper subjects of search, especially where warrant charged police with search of vehicles within curtilage); *Albert v. State*, 155 Ga. App. 99, 270 S.E.2d 220, 221 (1980), *cert. denied*, (warrant authorized search of "[a]ll vehicles ... within the curtilage of said premises."). *But see State v. Parsons*, 83 N.J.Super. 430, 200 A.2d 340, 349 (N.J.Super.Ct.App.Div.1964) (held that warrant did not authorize search of car because warrant described only building and not "curtilage" or "appurtenances," and the car was parked on the street). *See generally* WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 4.10(c) (2d ed 1978).

[¶ 15.] It appears that courts that have addressed the question have upheld the search of a car on the premises, even where a search of vehicles was not expressly included in the wording of the warrant, regardless of whether it was owned or controlled by the owner of the premises searched. *See, e.g., Gottschalk*, 915 F.2d at 1461; *United States v. Cole*, 628 F.2d 897, 899–900 (5thCir.1980) (upholding the search of a truck belonging to a third party who arrived at the searched residence during execution of the warrant), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). Since these federal circuit courts conclude that the search of a vehicle with a residence search warrant is valid, how can we say that the officers' conduct here in executing the warrant was objectively unreasonable?

[¶ 16.] Granted, two federal circuits limit the general rule that a warrant includes any vehicles located on the curtilage by requiring searching officers to act "reasonably in assuming that the [vehicles searched are] under the control of the premises owner...." *Gottschalk*, 915 F.2d at 1461. In the Seventh Circuit, "the vehicle to be searched *must* be owned or controlled by the owner of the premises searched...." *United States v. Percival*, 756 F.2d 600, 612 (7thCir.1985) (emphasis added). In dicta, the Eighth Circuit seemed to follow this reasoning to exclude vehicles owned by guests and other callers. *United States v. Reivich*, 793 F.2d 957, 963 (8thCir.1986). Yet these limitations have been rejected by several other courts. *Cole*, 628 F.2d at 897 (upholding the search of a truck of a third party that arrived at the searched residence during the execution of the search warrant), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *United States v. Schmude*, 699 F.Supp. 200, 202 (E.D.Wis.1988) ("absent any claim that the search [of the premises] was invalid, ... the search of a car found on the premises was within the scope of warrant"), *aff'd in part, rev'd in part on other grounds*, 901 F.2d 555 (7thCir.1990).

[¶ 17.] In general, search warrants authorizing home searches may lawfully include vehicles located within the curtilage of the home. The vehicle searched in this case was parked in the driveway, ten feet from the house. Appellate courts routinely uphold vehicle searches under these circumstances. Thus, a reasonably proficient law enforcement officer would not be unreasonable, much less acting in bad faith, to conclude that such a search was authorized here. This is so even if the warrant was arguably overbroad in not excluding vehicles belonging to guests.

[¶ 18.] In sum, we decline to rule on whether the "all vehicles" provision in the search warrant was unconstitutionally overbroad because the good faith exception applies here. Officer Sorensen's affidavit was not " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *See*

*Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted). The officers' good-faith reliance on the "all vehicles" provision in the warrant was objectively reasonable because (1) the Clerk Magistrate made a probable cause determination, (2) the affidavit provided specific information about the objects of the search, (3) the affiant, Officer Sorensen, helped to execute the warrant, and (4) the courts are divided on whether a warrant authorizing the search of a home includes all vehicles on the premises, including those not owned or controlled by the owner of the home. We conclude that the trial court did not err in refusing to suppress the evidence seized from defendant's CD case.

[¶ 19.] Affirmed.

[¶ 20.] GILBERTSON, Chief Justice and ZINTER, Justice, concur.

[¶ 21.] SABERS and MEIERHENRY, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 22.] I dissent for all of the reasons expressed in the writing of Justice Meierhenry. This search warrant should have been confined to vehicles used, owned or possessed by Joshua and Nick. Clearly, it should not include a passenger in a vehicle which temporarily parks in the driveway. In addition, this passenger is a stranger to the crime and clearly has standing to challenge the Fourth Amendment violation occurring here.

MEIERHENRY, Justice (dissenting).

[¶ 23.] I respectfully dissent. I would conclude that the "all vehicles" provision of the search warrant was unconstitutionally broad and that the good faith exception does not apply to the facts of this case.

The broad sweep of this opinion erodes our citizens' Fourth Amendment protections and undermines the court's duty to insure those rights are protected.

[¶ 24.] In this case, the only challenge is to the "all vehicles" provision of the warrant. Applying the same analysis laid out in *State v. Jackson,* 2000 SD 113, 616 N.W.2d 412, leads to the conclusion of insufficient probable cause to search "all vehicles" on the premises. Unlike the late-night illegal drug activities in *Jackson,* the officer had no information that the stolen property was about to be distributed in broad daylight from the residence or was about to be transported in a vehicle. Therefore, the officer had no logical or reasonable basis to request an "all vehicles" warrant nor did the clerk magistrate have a basis to grant an "all vehicles" warrant.[6] A sufficient nexus between the crime and the place to be searched needs more than mere speculation. Consequently, the "good faith" question here is whether the officer relied on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *State v. Belmontes,* 2000 SD 115, ¶ 11, 615 N.W.2d 634, 638 (citing *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

[¶ 25.] As we have previously said, "[i]f an officer's warrant request lies outside the range of reasonable proficiency expected of an officer, then that officer cannot rely on the magistrate's decision to issue the warrant." *Belmontes,* 2000 SD 115, ¶ 29, 615 N.W.2d at 641 (Konenkamp, J., concurring in result) (citing *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). In this case, the officer's warrant request to search "all vehicles" "lies outside the range of reason-

---

**6.** This particular warrant was issued by a clerk magistrate. Clerk magistrates are not law trained but are allowed by statute to issue search warrants. SDCL 16–12C–7.

able proficiency expected of an officer." Additionally, it is unreasonable for an executing officer to rely on a search warrant issued from his own insufficient affidavit. As one court expressed:

When the Supreme Court announced the good faith exception in *Leon*, it weakened the exclusionary rule, but it did not eviscerate it. "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2ndCir.1996). And particularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable. That aside, "[T]he good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all known facts." *Id.* at 1273. The objective standard "requires officers to have a reasonable knowledge of what the law prohibits." *[US v.] Leon*, 468 U.S. [897] at 919–20 n. 20, 104 S.Ct. 3405, 82 L.Ed.2d 677.

*United States v. Zimmerman*, 277 F.3d 426, 437–438 (3dCir.2002). We also recognized the mischief the "good faith" exception could foster: "an officer could submit an inadequate affidavit to a magistrate, which the officer knows is inadequate, and then willy-nilly go out and conduct the search because he has a "good faith" shield against any subsequent challenge." *Belmontes*, 2000 SD 115, ¶ 20, 615 N.W.2d at 640. The facts of this case do not merit a good faith exception.