#27339-a-GAS

**2015 S.D. 78**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

ANTONIO M. RUNNING SHIELD,                Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JARED TIDEMANN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                                and appellee.

TODD A. LOVE
Rapid City, South Dakota                  Attorney for defendant
                                                and appellant.

* * * *

ARGUED OCTOBER 7, 2015
OPINION FILED **10/28/15**

SEVERSON, Justice

[¶1.]     Antonio Running Shield was searched pursuant to a search warrant with an "all persons" provision.  He was found in possession of illegal drugs and subsequently convicted of possession of a controlled substance and possession of marijuana.  On appeal, he asserts that the affidavit in support of the search warrant lacked probable cause for the "all persons" provision and therefore the circuit court erred by failing to suppress evidence obtained as a result of the search. We affirm.

## Background

[¶2.]     On November 6, 2012, a confidential informant approached law enforcement in Rapid City and indicated that the informant could purchase methamphetamine from Travis Maho.  The informant stated that he or she had purchased such drugs in the past and that Maho currently resided on Haines Avenue but he also stayed at motels and hotels around Rapid City.  As a result, law enforcement directed the informant to arrange a controlled buy with Maho.  On November 6, 2012, the informant met Maho at the Super 8 Motel in Rapid City and bought methamphetamine.  On November 29, 2012, another controlled buy was arranged and successfully completed, this time at Maho's residence on Haines Avenue.  The confidential informant told law enforcement that he or she always enters the Haines residence from the alleyway, as was done on this occasion. Further, the informant told law enforcement that Brandi White also lived at this house and that she used drugs, but the informant did not think that she was selling drugs.

[¶3.]     On December 17, 2012, Maho was arrested during a traffic stop and taken into custody. Evidence of drug items and drug sales were found on Maho's person. In his car, law enforcement found a needle and plastic baggie that contained suspected methamphetamine. The next day, law enforcement contacted the informant and learned that Maho had moved within the past week or two from Haines Avenue to Anamosa Street. Law enforcement sought a search warrant of Maho's current and former residences and "any people present at the time the search warrant is executed that have a social nexus with Travis Allan Maho and Brandi Star White."

[¶4.]     When law enforcement arrived at the residence on Haines Avenue, officers blocked the exits of the alley behind the house and initiated a stop of Running Shield's vehicle, which was in the alley.[1] When Running Shield opened the door of his car, an officer could smell marijuana. The officer searched Running Shield and placed him in handcuffs. Thereafter, a search of the vehicle revealed bags of marijuana, a plastic case that contained a straw with residue, and a container with residue. The residue was determined to be methamphetamine. Thereafter, Running Shield was convicted of possession of a controlled substance and possession of marijuana.

[¶5.]     Prior to trial, Running Shield moved to suppress evidence from the stop, asserting that the affidavit lacked a sufficient factual basis to establish

---

1.     Nothing in the record indicates where along the alley Running Shield's vehicle was located. Running Shield's counsel represented at oral argument that Running Shield was pulling away from the Haines residence in the alley when officers blocked the exits and initiated the stop.

probable cause to search "any people present at the time the search warrant is executed that have a social nexus with Travis Allan Maho and Brandi Star White." The court denied the motion, holding that the affidavit adequately established probable cause for issuance of a warrant with the "any people" provision. Running Shield now appeals, asserting that his rights under the Fourth Amendment of the United States Constitution as incorporated by the Fourteenth Amendment and his rights under Article VI, § 11 of the South Dakota Constitution were violated.

## Analysis

[¶6.]    We need not reach the issue of whether the affidavit was sufficient to support the warrant's provisions. The State argued to the circuit court and asserts again on review that, even if the affidavit is determined to be deficient, this search was conducted pursuant to a warrant and therefore the good-faith exception to the exclusionary rule applies. Under the good-faith exception, evidence may be admissible, even when a warrant is subsequently invalidated, if law enforcement's reliance on the warrant was objectively reasonable. *See State v. Sorenson*, 2004 S.D. 108, ¶ 9, 688 N.W.2d 193, 197. "When reviewing suppression rulings, we have the discretion to proceed directly to the good-faith question without first deciding the issue of probable cause. We examine the good-faith exception de novo."[2] *Id.* (footnote omitted).

---

2.    A discussion of good faith rather than probable cause does not indicate that this Court found that the affidavit did not establish probable cause to issue a warrant. Rather, it simply addresses whether the evidence would be suppressed even if we were to find a lack of probable cause established by the affidavit.

[¶7.]    We have previously explained that "[s]uppression of evidence is not a personal constitutional right, but a judicially created remedy to deter constitutional violations by government officials." *Id.* ¶ 8, 688 N.W.2d. at 196 (citing *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 3412, 82 L. Ed. 2d 677 (1984)).  The United States Supreme Court has described the exclusionary rule as a "last resort" appropriate when "the deterrence benefits of suppression . . . outweigh its heavy costs." *Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2427, 180 L. Ed. 2d. 285 (2011) (quoting *Herring v. United States*, 555 U.S. 135, 137, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009)) (citation omitted).

> When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.  But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, or when their conduct involves only simple, "isolated" negligence, the "deterrence rationale loses much of its force," and exclusion cannot "pay its way."

*Davis,* 131 S. Ct. at 2427-28 (citations omitted).  Therefore, suppression "remains an appropriate remedy if [(1)] the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role"; (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923, 104 S. Ct. at 3421 (citation omitted); *see also Sorenson*, 2004 S.D. 108, ¶ 10, 688 N.W.2d at 197.  "In

the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926, 104 S. Ct. at 3422.

[¶8.]     Defendant concedes that neither of the first two scenarios above is applicable in this case. Instead, Defendant asserts that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923, 104 S. Ct. at 3421. Defendant asserts that there were no facts establishing a "sufficient nexus among the criminal activity, the place of the activity, and the persons in the place," a necessary requirement to support an "all persons" warrant. *See State v. Jackson*, 2000 S.D. 113, ¶ 15, 616 N.W.2d 412, 418 (quoting *People v. Johnson*, 805 P.2d 1156, 1159 (Colo. Ct. App. 1990)).

[¶9.]     The facts as set forth in the affidavit are not so deficient that an executing officer could not reasonably believe that it was valid. "What amount of evidence is required to form probable cause is not a question susceptible to formulaic solutions. Probable cause 'is a fluid concept – turning on the assessment of probabilities in particular contexts – not readily, or even usefully, reduced to a neat set of legal rules.'" *Jackson*, 2000 S.D. 113, ¶ 22, 616 N.W.2d at 420 (citation omitted) (quoting *State v. Farndon*, 488 N.E.2d. 894, 898 (Ohio Ct. App. 1984)). Law enforcement arranged two controlled purchases from Maho and confirmed through field tests that the substance Maho was selling was methamphetamine.

Defendant insists that only one purchase occurred at the Haines Avenue residence, as recited in the affidavit. However, as stated in the affidavit, the informant told law enforcement that the informant had purchased drugs in the past, that Maho had been residing there for three to four months, and that the informant "always entered the house through the alleyway access." "Reasonable inferences may be drawn from the information in the affidavit." *Jackson*, 2000 S.D. 113, ¶ 11, 616 N.W.2d at 416. It was reasonable to infer from the informant's statements that the controlled buy was not the first instance where the informant had entered the residence from the alleyway to purchase drugs from Maho.

[¶10.] The affidavit also indicated that Maho was currently being held in the county jail due to a traffic stop on December 17, 2012. Defendant asserts that a key factor to consider in this case is that Maho was in custody when the warrant was sought. The affidavit lists the items found in Maho's vehicle, which included a baggie of marijuana, a baggie of suspected methamphetamine, a scale, and a large amount of currency mixed in with baggies. These items indicated Maho's continued involvement in illegal drug activities. Although the informant believed that Maho had moved within the past week or two to a different location, the informant also relayed that Maho stayed at motels and hotels and, as confirmed by the controlled buy, he sold drugs at different locations. There was no indication that Maho had broken all ties with the Haines residence. *See also Jackson*, ¶ 21, 616 N.W.2d at 419 ("That some of these [drug] activities occurred at [defendants'] previous dwellings does not weaken the probable cause for an "all persons" search at their

-6-

latest home; it strengthens it, as it shows persistent illegal enterprise no matter where [defendants] resided.").

[¶11.]    Despite Defendant's contentions that there is no evidence that people present or arriving at the residence would be engaged in any on-going criminal activity, the affidavit explained that based on the officer's "training, experience and participation in narcotic investigations . . . [he knew:] . . . [t]hat illegal drug traffickers commonly have people at their residence or arriving at their residence purchasing illegal substances."[3]  In addition, White, who the informant believed used drugs and who had been at the residence when the informant purchased drugs, still lived in the home at the time the search warrant was sought.  "[T]he nature of the criminal activity [drug dealing] was such that participants constantly shifted or changed[,] making it practically impossible for law enforcement to predict that any specific person or persons would be on the premises at any given time." *Jackson*, 2000 S.D. 113, ¶ 25, 616 N.W.2d at 420.  Defendant also points out that a

---

3.    Defendant relies on Iowa precedent in support of his position that the "all persons" warrant was deficient.  In *State v. Prior*, the Supreme Court of Iowa held that "[t]here must be evidence that gives rise to an inference that all persons on the premises would necessarily be involved in the illegal activity.  Thus, 'all persons' warrants meet the particularity and probable cause requirements of the Fourth Amendment only in limited circumstances where there is probable cause to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the articles sought."  617 N.W.2d 260, 265 (Iowa 2000) (citations omitted).  This is a stricter standard than we employ.  We have explained: "[T]o hold that an affidavit must contain facts showing that nothing but illegal activity is taking place in a location before an 'all persons' warrant may be issued 'would simply deny government a needed power to deal with crime, without advancing the interest the Fourth Amendment was meant to serve.'" *Jackson*, 2000 S.D. 113, ¶ 23, 616 N.W.2d at 420 (quoting *State v. De Simone*, 288 A.2d 849, 851 (N.J. 1972).

few weeks had elapsed between the controlled drug purchases and between the last drug purchase and the search warrant being sought and executed. However, "drug activities are ordinarily a regenerating and continuous activity, which occur over a protracted time." *State v. Wilkinson*, 2007 S.D. 79, ¶ 24, 739 N.W.2d 254, 261. Therefore, the affidavit in support of the warrant executed in this case is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923, 104 S. Ct. at 3421.

## Conclusion

[¶12.] Based on the facts as enumerated in the affidavit and the reasonable inferences drawn from those facts, the officers' good-faith reliance on the warrant, specifically its "all persons" provision, was objectively reasonable; thereby making suppression an inappropriate remedy in this case. We affirm.

[¶13.] GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.